UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COREY D. HOLDER, as Personal
Representative of the Estate
of Elizabeth Holder, a
deceased minor child, and on
behalf of Corey Holder,
individually, and Stephanie Ann
Judah, individually, as survivors,

    Plaintiffs,

v.                                            Case No. 8:14-cv-3052-T-33TGW

BOB GUALTIERI, in his official
and individual capacity as
Sheriff of Pinellas County,
Florida,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Bob Gualtieri ("Gualtieri"), individually and in his official capacity as Sheriff of Pinellas County, Florida's Motion to Dismiss Plaintiffs' Complaint (Doc. # 6), filed on January 6, 2015. Plaintiff, Corey D. Holder, as Personal Representative of the Estate of Elizabeth Holder, a deceased minor child, and on behalf of her parents and survivors, Corey D. Holder and Stephanie Ann Judah (collectively referred to as "Plaintiffs") filed a memorandum in opposition to Gualtieri's Motion on January 14, 2015. (Doc. # 10). With leave of Court,

Gualtieri filed a reply to Plaintiffs' memorandum on January 23, 2015. (Doc. # 13). For the reasons stated below, Gualtieri's Motion is granted. However, this action is dismissed without prejudice so that Plaintiffs may file an amended complaint in accordance with this Order.

I. **Background**

On January 11, 2013, the Pinellas County Sheriff involuntarily removed five-year-old Elizabeth Holder from the home of her parents, Corey D. Holder and Stephanie Ann Judah, based upon an allegation that Elizabeth was not properly supervised. (Doc. # 1 at ¶ 10). At all relevant times, Gualtieri was the Sheriff of Pinellas County, Florida. (Id. at ¶ 8).

According to the Complaint, "[o]nce Elizabeth was taken into custody by the Sheriff, the Sheriff had a 'special relationship' and duty of care for the child's wellbeing." (Id. at ¶ 11). In addition, Plaintiffs suggest that "the Sheriff also had a duty imposed by the Florida Administrative Code to submit the child to a medical assessment by a licensed healthcare professional within 72 hours of being taken into the Sheriff's custody," pursuant to:

> **65C-29.008 Initial Health Care Assessment and Medical Examination of Children Alleged to Be Abused, Neglected, or Abandoned.**
>
> *(1) An initial health care assessment by a licensed health care professional will be completed for every child entering emergency shelter care within seventy-two hours of removal.*

(Id. at ¶ 12)(emphasis in original).

According to the Complaint, Gualtieri was aware of the Florida State Regulations, specifically Florida Administrative Code 65C-29.008 and its application to him, but, Gualtieri "willfully, recklessly, and with wanton and deliberate disregard for the law and for the health and safety of the child did not submit Elizabeth to a medical assessment within the required 72-hour period or at any time prior to her death." (Id. at ¶ 13).

Elizabeth was in Gualtieri's custody for eight days prior to her death, which was caused by "oxygen deprivation from a swollen throat" due to tonsillitis. (Id. at ¶ 19). Pursuant to the Complaint allegations, "[t]he Medical Examiner's autopsy examination of Elizabeth's corpse documented that Elizabeth had acute tonsillitis at the time of her death." (Id.). Plaintiffs argue that "Elizabeth complained of a severe headache immediately before her

3

death," which Plaintiffs contend was a symptom of hypoxia - lack of oxygen to the brain. (Id.). To that end, Plaintiffs aver that "Elizabeth could not breathe adequately as her throat was swollen shut." (Id.). Thus, Plaintiffs posit that Elizabeth's "headache and her death were caused by her inability to breathe." (Id.).

Plaintiffs' position is that "[i]f a medical exam had been performed [on Elizabeth] within 72 hours of taking her into custody, her tonsillitis, which was a serious medical condition, would have been easily diagnosed and successfully treated." (Id. at ¶ 20). Plaintiffs further submit that Gualtieri's "deliberate indifference and his custom, practice and policy of not abiding by the Florida Child Welfare regulations, and providing medical exams to children involuntarily taken into his custody was a legal cause of Elizabeth Holder's death." (Id. at ¶ 21).

Plaintiffs initiated this action on December 8, 2014, setting forth the following claims against Gualtieri, both individually and in his representative capacity as Sheriff of Pinellas County:

> 1. 42 U.S.C. § 1983 – Constitutional Violations Claim of Estate of Elizabeth Holder;

   2. 42 U.S.C. § 1983 – Constitutional Violations Claim of Corey Holder, as natural father;

   3. 42 U.S.C. § 1983 – Constitutional Violations Claim of Stephanie Ann Judah, as natural mother;

   4. Wrongful Death under Florida Statute [§§] 768.16 and 768.28;

   5. Survivor Father Corey Holder; and

   6. Survivor Mother Stephanie Judah

(See Doc. # 1). Gualtieri filed the present Motion on January 6, 2015, pursuant to Fed. R. Civ. P. 12(b)(6), which is ripe for the Court's review. (See Doc. # 6).

## II. Legal Standard

On a motion to dismiss, this Court accepts as true all of the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

5

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. Analysis

Gualtieri argues that Plaintiffs fail to specify whether Gualtieri is being sued in his official or individual capacity. (Doc. # 6 at 6). Specifically, Gualtieri contends that:

6

> Plaintiffs list Sheriff both in his individual and official capacity in the caption but never identify which claims or causes of action are brought against which capacity of Sheriff. Plaintiff's factual allegations appear to state that Sheriff Bob Gualtieri himself (not one of his employees) removed the minor, Elizabeth Holder, from the home of her parents. However, since Plaintiffs[] are aware that this is patently false, and considering the wholesale incorporation of all preceding paragraphs, perhaps the allegation is meant to be understood that an employee of Sheriff removed the child in the course and scope of employment at the Pinellas County Sheriff's Office. Either way, Sheriff is left to speculate.

(Id.)(internal citation omitted).

Instead, as suggested by Gualtieri, the Complaint is "divided by supposed various claimants." (Id. at 8). Gualtieri argues that "Plaintiffs' choice to separate counts by claimant does not place Sheriff or the Court on notice of the theory of liability as to each capacity of Sheriff." (Id.).

In response, Plaintiffs provide that "[t]he complaint is clear that Sheriff Gualtieri is sued both in his individual capacity and in his official capacity as the Sheriff of Pinellas County." (Doc. # 10 at 5). Although paragraph 4 of the Complaint alleges that "at all times material hereto, the actions, policies, customs, practices, and conduct

7

hereinafter alleged were performed and implemented by the Pinellas County Sheriff and his duties, officers and employees within the course and scope of their employment and under color of state and local law in Pinellas County, Florida" (Doc. # 1 at 2), Plaintiffs posit that "this allegation does not necessarily mean that the Sheriff acted only in his official capacity as to that paragraph[]." (Doc. # 10 at 5).

To that end, Plaintiffs provide that:

[t]he thrust of the Complaint was not the Sheriff's involuntary removal of the deceased child into his custody, but [ ] his policy and custom of deliberately ignoring a State regulation that required medical treatment of the child within 72 hours of being taken into custody. This was done by the Sheriff both individually and in his official capacity as Sheriff.

(Id.)(citing Kentucky v. Graham, 473 U.S. 159 (1985)).

As set forth in Kentucky:

On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation, thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law.

8

> When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua entity*, may possess, such as the Eleventh Amendment. While not exhaustive, this list illustrates the basic distinction between personal- and official-capacity actions.
>
> With this distinction in mind, it is clear that a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity. A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him. Indeed, unless a distinct cause of action is asserted against the entity itself, the entity is not even a party to a personal-capacity lawsuit and has no opportunity to present a defense. That a plaintiff has prevailed against one party does not entitle him to fees from another party, let alone from a nonparty.

Kentucky, 473 U.S. at 166-68 (internal citations and quotations omitted).

Although the Complaint separates each count by claimant, the Complaint fails to identify, as to each count, under which capacity Gualtieri is being sued; namely, in his individual capacity or official capacity as the Sheriff of Pinellas County. As described in Kentucky, different defenses and

immunities may be raised depending on whether this action is a personal-capacity action or an official-capacity action. Due to Plaintiffs' failure to identify whether this is a personal-capacity action or an official-capacity action, Gualtieri is required to hypothesize what defenses and theories of liability apply in this action. Thus, Gualtieri "is forced to respond to all counts collectively: first, as if Plaintiffs are alleging official capacity liability under § 1983; and then, as if Plaintiffs are alleging individual capacity liability under § 1983 followed by a similar analysis applied to the state law cause of action." (Doc. # 6 at 8).

The Court recognizes that Plaintiffs intend to "flesh out during this proceeding in which capacity the Sheriff acted when he deliberately ignored the statutory medical assessment requirement for Elizabeth Holder." (Doc. # 10 at 6). However, as the Complaint is pled, this Court is unable to determine whether Plaintiffs satisfied the pleading requirement of Fed. R. Civ. P. 8(a). Further, this Court is unable to thoroughly analyze the application of Gualtieri's raised defenses and theories of immunity.

Because the Complaint fails to provide a plain statement of their claims showing that Plaintiffs are entitled to relief, the Court grants Gualtieri's Motion. The case is

dismissed without prejudice so that Plaintiffs may file an amended complaint that complies with the pleading requirements of the Federal Rules of Civil Procedure. With respect to each separate count, the amended complaint should clarify whether Plaintiffs are suing Gualtieri individually or in his official capacity.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Bob Gualtieri, individually and in his official capacity as Sheriff of Pinellas County, Florida's Motion to Dismiss Plaintiffs' Complaint (Doc. # 6) is **GRANTED**.

(2) Plaintiffs have until and including **February 13, 2015,** to file their amended complaint in accordance with this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of January, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record