UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COREY D. HOLDER, as Personal
Representative of the Estate of
Elizabeth Holder, a deceased
minor child,

      Plaintiff,

v.                        Case No. 8:14-cv-3052-T-33TGW

BOB GUALTIERI, in his official
capacity as Sheriff of Pinellas
County, Florida,

      Defendant.
_____/

## ORDER

This cause is before the Court pursuant to the Motion to
Dismiss Plaintiff's Amended Complaint (Doc. # 26), filed on
March 2, 2015, by Defendant Bob Gualtieri, who is sued in his
official capacity as the Sheriff of Pinellas County, Florida
("the Sheriff"). On March 12, 2015, Plaintiff Corey D. Holder
("Holder") filed a response in opposition to the Motion.
(Doc. # 27). On March 19, 2015, the Sheriff filed a reply,
with leave of Court. (Doc. ## 29-30). For the reasons that
follow, the Sheriff's Motion to Dismiss is granted in part and
denied in part.

## I.  Background

On December 8, 2014, Holder initiated the instant action
in his capacity as personal representative, alleging that his
five-year-old daughter, Elizabeth Holder ("Elizabeth"), died
while in the Sheriff's custody. (Doc. # 1). On January 27,

2015, this Court granted the Sheriff's motion to dismiss the original complaint, due to Holder's failure to specify whether the Sheriff was sued in his individual capacity or official capacity with respect to each of the six counts. (Doc. ## 6, 14).

On February 4, 2015, Holder filed an Amended Complaint, suing the Sheriff in his official capacity only. (Doc. # 23 at ¶ 5). The Amended Complaint includes two counts: a claim pursuant to 42 U.S.C. § 1983 (Count I) and a state-law claim pursuant to Florida's Wrongful Death Act, Fla. Stat. §§ 768.16, et seq. (Count II). (Id. at ¶¶ 19-37). The relevant facts follow.

On January 11, 2013, Elizabeth was involuntarily removed from the custody of her parents by the Child Protection Division of the Pinellas County, Florida Sheriff's Office. (Id. at ¶¶ 7-8). Holder alleges that Elizabeth died eight days later, from tonsillitis. (Id. at ¶¶ 7, 12, 14). The Sheriff failed to submit Elizabeth to a medical assessment by a licensed healthcare professional within 72 hours of taking her into custody, as required by section 65C-29.008 of the Florida Administrative Code. (Id. at ¶¶ 9-10). Had Elizabeth received a timely medical assessment, Holder alleges that her tonsillitis would have been detected, and Elizabeth would not have died. (Id. at ¶¶ 12-13).

2

Holder maintains that the Sheriff had a custom, policy, and practice of involuntarily removing children from their parents without ensuring that the children were examined by a healthcare professional within 72 hours. (<u>Id.</u> at ¶ 11). In particular, a review of 884 cases in which the Sheriff removed children in 2012 showed that the medical assessment was performed in only 279 cases. (<u>Id.</u>). The Sheriff told the media after Elizabeth's death that there was a "problem with our policy" and "it was a problem with procedure, it's a system problem, not any one individual's fault," and further stated "I accept complete responsibility for this," and "[t]his is something we should have done." (<u>Id.</u>).

In the Motion to Dismiss, the Sheriff claims entitlement to Eleventh Amendment immunity and sovereign immunity. (<u>See</u> Doc. # 26). The Sheriff also argues that Holder fails to state a claim for relief under either section 1983 or the Florida Wrongful Death Act. (<u>See</u> <u>Id.</u>). The Motion is ripe for the Court's review.

## II. <u>Legal Standard</u>

On a motion to dismiss, this Court accepts as true all of the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable

3

inferences from the allegations in the complaint.  <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").  However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted).  Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

In accordance with <u>Twombly</u>, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

**III. <u>Analysis</u>**

**A.   <u>Eleventh Amendment Immunity</u>**

Absent waiver or a valid Congressional override, a suit

4

against a state in federal court is barred by the Eleventh Amendment. Odebrecht Constr., Inc. v. Sec., Fla. Dep't of Transp., 715 F.3d 1268, 1289 (11th Cir. 2013). Eleventh Amendment immunity extends beyond the state itself "to state officers and entities when they act as an 'arm of the state.'" Lightfoot v. Henry Cnty. Sch. Dist., 771 F.3d 764, 768 (11th Cir. 2014) (internal quotation marks omitted). The immunity does not apply "to counties, municipal corporations, or similar political subdivisions of the state." Id.

In assessing whether an entity may be considered an "arm of the state," courts evaluate four factors: (1) how state law defines the entity, (2) what degree of control the state maintains over the entity, (3) the source of the entity's funds, and (4) who is responsible for judgments against the entity. Manders v. Lee, 338 F.3d 1304, 1309 (11th Cir. 2003) (en banc). The four factors are assessed "in light of the particular function in which the defendant was engaged" at the time the cause of action arose. Id. at 1308. Although this necessarily entails a case-by-case inquiry, the Eleventh Circuit has "repeatedly held that Florida's sheriffs are not arms of the state" and are therefore not entitled to Eleventh Amendment immunity. Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 405 F.3d 1298, 1304 (11th Cir. 2005).

In the instant Motion, the Sheriff concedes that he would not be entitled to Eleventh Amendment immunity if he were

5

carrying out traditional police functions.  (Doc. # 26 at 7).
Nonetheless, the Sheriff maintains that, under the unique
circumstances of this case, he was performing duties typically
within the sole purview of the State of Florida's Department
of Children and Families ("DCF"), sufficient to afford him arm
of the state status.  (Id. at 6-7; Doc. # 30 at 2).  Upon
consideration of the four factors, the Court finds that the
Sheriff has failed to demonstrate that he is entitled to arm
of the state status, at this juncture.

As to the first factor — how state law defines the entity
— the Eleventh Circuit has held that "Florida's constitution
and case law establish overwhelmingly that Florida law defines
sheriffs as county officials." Abusaid, 405 F.3d at 1306.  As
a result, the first factor "weighs heavily against assigning
arm of the state status to a Florida sheriff." Id. at 1305.
In the Motion to Dismiss, the Sheriff cites no legal authority
that warrants a different result; rather, the Sheriff's
arguments pertain to the remaining three factors.  (See Doc.
# 26 at 7-9).

The second factor addresses what degree of control the
state retains over the function the Sheriff was performing at
the time the cause of action arose.  Manders, 338 F.3d at
1308.  In this case, the Sheriff maintains that child
protective services in Pinellas County are controlled by the
state, by virtue of Fla. Stat. § 39.3065.  (Doc. # 26 at 6-8;

6

Doc. # 30 at 3-4).  Specifically, section 39.3065 requires

that DCF:

> transfer all responsibility for child protective
> investigations for Pinellas County, Manatee County,
> Broward County, and Pasco County to the sheriff of
> that county in which the child abuse, neglect, or
> abandonment is alleged to have occurred.  Each
> sheriff is responsible for the provision of all
> child protective investigations in his or her
> county.  Each individual who provides these
> services must complete the training provided to and
> required of protective investigators employed by
> the Department of Children and Families.

Fla. Stat. § 39.3065(1).  The statute additionally requires

the Sheriff to "operate, at a minimum, in accordance with the

performance standards and outcome measures established by the

Legislature for protective investigations conducted by [DCF]."

Fla. Stat. § 39.3065(3)(b).  The procedures for child

protective investigations are detailed in Part III

("Protective Investigations") of Chapter 39 of the Florida

Statutes.  See Fla. Stat. §§ 39.301-39.308.

These statutory provisions do indicate that the state

retains a degree of control over the Sheriff's performance of

child protective investigations.  Based on the allegations in

the Amended Complaint, however, the "particular function" at

issue is arguably Elizabeth's removal from her parents'

custody – not an investigation.  (See, e.g., Doc. # 23 at

¶¶ 8-9).  Removal is governed under Part IV ("Taking Children

into Custody and Shelter Hearings") of Chapter 39 of the

Florida Statutes. Specifically, pursuant to Fla. Stat. § 39.401, a child may be taken into custody if there is probable cause to support a finding of abuse, neglect, or abandonment by either: (1) an authorized agent of DCF; or (2) "a law enforcement officer." Fla. Stat. § 39.401(1)(b). If a law enforcement officer removes a child, the officer may only release the child to certain specified individuals, including a relative or non-relative, or the officer may deliver the child to an authorized agent of DCF. Fla. Stat. § 39.401(2). Removal and placement with a relative or non-relative, in turn, triggers the protections of Florida Administrative Code section 65C-29.008, the provision on which Holder bases his claims. (See, e.g., Doc. # 23 at ¶¶ 9, 25, 30). Specifically, section 65C-29.008 mandates that "an initial health care assessment by a licensed health care professional shall be completed for every child placed with a relative, non-relative, or in licensed care." Fla. Admin. Code § 65C-29.008(1).[1]

In the Motion to Dismiss, the Sheriff does not meaningfully address the distinction between child protective

---

[1] This section of the Florida Administrative Code is authorized pursuant to Fla. Stat. § 39.407, which provides: "When any child is removed from the home and maintained in an out-of-home placement, the department is authorized to have a medical screening performed on the child without authorization from the court and without consent from a parent or legal custodian." Fla. Stat. § 39.407(1).

investigations and removals. (Doc. # 26 at 7-9; Doc. # 30 at 1-5). On its face, Fla. Stat. § 39.401(1)(b) appears to authorize any law enforcement officer to remove a child — without limitation to the sheriffs authorized to perform child protective investigations under Fla. Stat. § 39.3065. See Wimer v. Vila, 37 F. Supp. 2d 1351, 1352 (M.D. Fla. 1999)(addressing removal by Collier County deputy sheriffs). The Court is therefore not persuaded that DCF's transfer of responsibility for child protective investigations to the Sheriff, pursuant to Fla. Stat. § 39.3065, necessarily demonstrates state control over the "particular function" at issue in this case. Manders, 338 F.3d at 1308.

Even assuming that the second factor does weigh in favor of arm of the state status, the Sheriff fails to demonstrate that the remaining two factors are similarly weighted. As to the third factor – the source of the entity's funds — the Sheriff argues that Fla. Stat. § 39.3065 provides that "funding for the investigative responsibilities assumed by the sheriffs" is appropriated to DCF, which, in turn, awards grants to the sheriffs. Fla. Stat. § 39.3065(3)(c). The statute requires that the funds remain separate from the sheriffs' regular budgets. Id.

As discussed, it is not clear that Elizabeth's removal was accomplished pursuant to the Sheriff's "investigative responsibilities" under Fla. Stat. § 39.3065. And the Sheriff

9

identifies no other authority suggesting that he receives funding from state sources. <u>Abusaid</u>, 405 F.3d at 1310 (explaining that sheriffs' budgets are funded entirely by county taxes). As a result, the Sheriff fails to demonstrate that state money funded the "particular function" at issue. See <u>Id.</u>

Finally, the fourth factor concerns whether a judgment would be paid out of the state treasury. In the instant Motion, the Sheriff fails to directly address whether a judgment would be paid by the state or by the Sheriff. (Doc. # 26 at 8). The Sheriff's Reply contains no analysis on this issue. (<u>See</u> Doc. # 30). The Eleventh Circuit has previously held that this factor "weighs decidedly against arm of the state status" because there is no provision in Florida law suggesting that a judgment against a sheriff would be paid out of the state treasury. <u>Abusaid</u>, 405 F.3d at 1312; <u>see also</u> <u>Hufford v. Rodgers</u>, 912 F.2d 1338, 1342 (11th Cir. 1990) (noting that sheriff was insured through monies appropriated by county commission, as part of a self-insurance fund, and that "the parties here could not invoke the State of Florida to pay any judgment on behalf of [the Sheriff]"); <u>accord</u> <u>Rivas v. Freeman</u>, 940 F.2d 1491, 1495 (11th Cir. 1991).

Based on the foregoing, the Sheriff fails, at this juncture, to demonstrate that Eleventh Amendment immunity bars

Holder's claim.  The Motion to Dismiss is therefore denied on this ground, without prejudice to reassertion of the immunity defense at the summary judgment stage.  <u>Misener Marine Constr., Inc. v. Ga. Ports Auth.</u>, 199 F. App'x 899, 900 (11th Cir. 2006).

**B.   <u>Section 1983 (Count I)</u>**

Section 1983 of the Civil Rights Act of 1871 creates a cause of action for the deprivation of rights, privileges, or immunities secured by the federal Constitution or federal law, by any person acting under color of state law.  42 U.S.C. § 1983; <u>Arrington v. Cobb Cnty.</u>, 139 F.3d 865, 872 (11th Cir. 1998).  To prevail on a claim for relief under section 1983, a plaintiff must establish that: (1) he has been deprived of a right, privilege, or immunity secured by the Constitution or federal law, and (2) the deprivation occurred under color of state law.  <u>Id.</u>; <u>Mingo v. City of Mobile</u>, 592 F. App'x 793, 799 (11th Cir. 2014)(citing <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1303 (11th Cir. 2001)).

Holder sues the Sheriff in his official capacity, which is the functional equivalent of a suit against Pinellas County.  <u>See</u> <u>Vineyard v. Cnty. of Murray</u>, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993).  It is well-established that counties are "persons" within the scope of section 1983.  <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004).  However, a

section 1983 claim against a municipality "must be predicated upon an injury inflicted by a municipal policy or custom." Mingo, 592 F. App'x at 799 (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)). An official policy or custom may be shown in several ways, including "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Id. (citing Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011)).

Alternatively, a plaintiff may demonstrate an official policy by showing that the municipality had a "policy of inadequate training or supervision." Id. Under this theory, a facially lawful municipal action may violate the plaintiff's rights if it "was taken with 'deliberate indifference' as to its known or obvious consequences." Id. (quoting Bd. of Cnty. Commr's of Bryan Cnty. v. Brown, 520 U.S. 397, 407 (1997)) (internal quotation marks omitted). In order to establish a municipality's deliberate indifference, "a plaintiff must demonstrate that the municipality knew of the need to train in a particular area and that it made a deliberate choice not to take any action." Id. (citing Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)). Deliberate indifference may be demonstrated in two ways: (1) by alleging "a widespread pattern of similar constitutional violations by untrained

12

employees," or (2) "by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation." Id. at 799-800 (citing Connick, 131 S.Ct. at 1360).

In the Motion to Dismiss, the Sheriff raises two primary arguments. First, the Sheriff maintains that Holder fails to allege a deprivation of rights guaranteed by federal law. (Doc. # 26 at 10-11). Second, the Sheriff argues that Holder fails to adequately allege that a municipal policy or custom caused the violation of federal law. (Id. at 11-16). As explained below, the Motion to Dismiss is granted as to Count I, due to Holder's failure to allege a deprivation of rights guaranteed by federal law.

In the Amended Complaint, Holder alleges that the denial of Elizabeth's "statutory right to a timely medical assessment violated her right to due process under the Fourteenth Amendment." (Doc. # 23 at ¶ 25). Holder does not specify whether he is alleging a deprivation of substantive due process or procedural due process. See Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002) (distinguishing substantive due process and procedural due process claims). To the extent that Holder attempts to allege a substantive due process claim based on the Sheriff's violation of a Florida administrative rule, that claim fails. It is well-established that

13

substantive rights created by state law are "not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution." Goodman v. City of Cape Coral, 581 F. App'x 736, 738-39 (11th Cir. 2014) (quoting McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)) (internal quotation marks omitted); Greenbriar Vill., L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003).

On the other hand, the Eleventh Circuit has held that foster children have a cognizable liberty interest, under the substantive due process clause, "to be free from unnecessary pain and a fundamental right to physical safety." Ray v. Foltz, 370 F.3d 1079, 1082 (11th Cir. 2004); Taylor By and Through Walker v. Ledbetter, 818 F.2d 791, 794 (11th Cir. 1987) (en banc). As currently pled, the Amended Complaint does not appear to allege a violation of a constitutionally-protected liberty interest because the claim is expressly premised on a violation of section 65C-29.008 of the Florida Administrative Code. (See Doc. # 23 at ¶ 25).

In contrast to a substantive due process claim, a procedural due process claim may be based on a state-created property or liberty interest. Ward v. Downtown Dev. Auth., 786 F.2d 1526, 1531 (11th Cir. 1986). The state laws or regulations must, however, create "a legitimate and sufficiently vested" claim of entitlement. Taylor, 818 F.2d

14

at 798; see Doe v. Moore, 410 F.3d 1337, 1350 (11th Cir. 2005) (observing that state-created procedural rights, under the Florida Administrative Code, "that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory") (internal quotation marks omitted). For instance, a child may allege a deprivation of procedural due process where state law "mandates that officials follow guidelines and take affirmative actions to ensure the well being and promote the welfare of children in foster care." Taylor, 818 F.2d at 799 (analyzing Georgia law). Under these circumstances, a child "can state a claim based upon deprivation of a liberty interest in personal safety when the officials fail to follow this mandate." Id.

The substance of Count I suggests that Holder is attempting to proceed under a procedural due process theory, as Holder bases the claim on the denial of a state-created right. (Doc. # 23 at ¶ 25). However, Holder fails to specifically identify the liberty or property interest of which Elizabeth was allegedly deprived, and Holder also fails to allege that the process provided was inadequate. See Wimer, 37 F. Supp. 2d at 1354 (holding that plaintiffs failed to state a procedural due process violation in connection with Fla. Stat. § 39.401 because they failed to identify an alternative pre-deprivation procedure). Morever, in the

15

response in opposition, Holder maintains that the section 1983 claim is premised on the deprivation of Elizabeth's "Constitutional right to life without due process," rather than a state-created right.  (Doc. # 27 at 16).

Accordingly, Count I is dismissed without prejudice and with leave to amend.  To the extent that Holder seeks to raise more than one constitutional violation pursuant to section 1983 (i.e., a substantive due process violation and a procedural due process violation), he is directed to include each alleged constitutional violation in a separate count, with the requisite supporting factual allegations.

Absent a clearly alleged constitutional violation, the Court is unable to determine whether Holder has adequately alleged that the violation was caused by a municipal custom or policy.   The Court therefore expresses no opinion on the adequacy of Holder's allegations in this respect.  Compare Crispell v. Fla. Dep't of Children & Families, No. 8:11-cv-1527, 2012 WL 3599349, at *4-5 (M.D. Fla. Aug. 20, 2012) (granting motion to dismiss for failure to state a claim based on inadequate allegations of custom, policy, and failure-to-train), with Woodburn v. State of Fla. Dep't of Children & Family Servs., 854 F. Supp. 2d 1184, 1201 (S.D. Fla. 2011) (holding that allegations were sufficient to allege a municipal custom or policy).  Likewise, the Court does not address the parties' arguments regarding the consideration of

an exhibit outside of the pleadings – Elizabeth's autopsy report — which the Sheriff offers on the issue of causation. (See Doc. # 26 at 3-5; Doc. # 27 at 2-5).

Based on the foregoing, the Sheriff's Motion to Dismiss Count I is granted.

**C.   Wrongful Death (Count II)**

In Florida, a claim for wrongful death is "created and limited by Florida's Wrongful Death Act." Cinghina v. Racik, 647 So. 2d 289, 290 (Fla. 4th DCA 1994); Estate of McCall v. United States, 134 So. 3d 894, 915 (Fla. 2014). The Act provides a right of action "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person . . . and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued." Fla. Stat. § 768.19; Knowles v. Beverly Enters.-Fla., Inc., 898 So. 2d 1, 8-9 (Fla. 2004). To state a claim for negligence in a wrongful death action, a plaintiff must allege: "(1) the existence of a legal duty owed to the decedent, (2) breach of that duty, (3) legal or proximate cause of death was that breach, and (4) consequential damages." Jenkins v. W.L. Roberts, Inc., 851 So. 2d 781, 783 (Fla. 1st DCA 2003).

Pursuant to Fla. Stat. § 768.28, the state of Florida, including its agencies and subdivisions, has waived sovereign

immunity for tort claims.  Fla. Stat. § 768.28(1); <u>Beard v. Hambrick</u>, 396 So. 2d 708, 711 (Fla. 1981) (holding that the waiver applies to sheriffs).  The exclusive remedy is against the government entity, or the head of the government entity in his official capacity, unless an employee acted with bad faith, malicious purpose, or wanton and willful disregard of human rights, safety, or property.  Fla. Stat. § 768.28(9)(a).

Despite the statutory waiver of sovereign immunity, a government entity remains immune from suit for certain policy and planning decisions, under the "discretionary function" exception.  <u>Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.</u>, 402 F.3d 1092, 1117-18 (11th Cir. 2005).  For instance, decisions regarding how to train employees and what subject matter to include in training represent an exercise of governmental discretion.  <u>Id.</u> at 1118; <u>Lewis v. City of St. Petersburg</u>, 260 F.3d 1260, 1264 (11th Cir. 2001).  By contrast, "operational" acts remain subject to the statutory waiver of sovereign immunity.  <u>Cook</u>, 402 F.3d at 1118.

In the instant Motion, the Sheriff argues that Holder fails to state a wrongful death claim because Holder does not allege that the Sheriff's employees committed a negligent act. (Doc. # 26 at 17-18). Further, to the extent Holder challenges the Sheriff's policy regarding medical assessments, the Sheriff argues that he retains immunity under the discretionary-function exception.  (<u>Id.</u> at 17-20).

The Amended Complaint adequately states a claim for wrongful death.  Specifically, Holder alleges that the Sheriff "through his officers, employees and/or agents, took Elizabeth Holder into his custody."  (Doc. # 23 at ¶ 29).  Holder maintains that the Sheriff had a common-law duty to provide reasonably adequate medical care, as well as a statutory duty to submit Elizabeth to a medical assessment within 72 hours. (Id. at ¶¶ 29-30).  Had Elizabeth been provided the requisite medical assessment within 72 hours, Holder alleges that Elizabeth's tonsilitis would have been treated, and she would not have died.  (Id. at ¶ 33).  As a result, Elizabeth's death was "a direct and foreseeable consequence of the negligent acts and omissions of Sheriff Gualtieri, and his officers, employees and agents." (Id. at ¶ 35).

The foregoing allegations sufficiently state a claim for negligence based on the acts of the Sheriff's officers, employees, or agents.  Jenkins, 851 So. 2d at 783.  As currently pled, the claim does not demonstrate that the Sheriff's subordinates acted with bad faith, malicious purpose, or wanton and willful disregard, sufficient to place their conduct outside the waiver of statutory immunity.  See McGhee v. Volusia Cnty., 679 So. 2d 729, 733 (Fla. 1996) (holding that, under the facts of the case, the issue of bad faith must be submitted to a fact-finder); Baldwin v. City of Fort Lauderdale, 961 So. 2d 1015, 1015 (Fla. 4th DCA 2007) (same).

Moreover, Count II does not appear to challenge a policy decision by the Sheriff, sufficient to implicate the discretionary-function exception to the statutory waiver of sovereign immunity. Rather, the Amended Complaint alleges negligence by the Sheriff's subordinates, in failing to obtain a medical assessment, which is arguably operational in nature. See Dep't of Health & Rehabilitative Servs. v. Yamuni, 529 So. 2d 258, 259 (Fla. 1988) (holding that caseworker's failure to remove child from mother's custody was an operational-level activity); Floyd v. Dep't of Children & Families, 855 So. 2d 204, 205-06 (Fla. 1st DCA 2003) (holding that DCF investigator's actions, in returning child to the custody of an abuser, were operational-level).

The Sheriff alternatively argues that Fla Stat. § 39.011 provides "additional immunity." (Doc. # 26 at 18). That statute provides:

> In no case shall employees or agents of the department or a social service agency acting in good faith be liable for damages as a result of failing to provide services agreed to under the case plan unless the failure to provide such services occurs as a result of bad faith or malicious purpose or occurs in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla Stat. § 39.011(1). Even if this immunity could be extended to the Sheriff's subordinates, based on their responsibility for child protective investigations under Fla. Stat. § 39.3065, the Amended Complaint does not allege a failure "to provide services agreed to under the case plan,"

20

or that such a plan even exists. <u>See</u> Fla. Stat. § 39.01(11) (defining "case plan" as a document described under section 39.6011); Fla. Stat. § 39.6011(1)(a) & (6)(b)(2) (providing that a case plan must be developed in a face-to-face conference, within 60 days of an out-of-home placement). Accordingly, the Sheriff fails to demonstrate entitlement to immunity under Fla. Stat. § 39.011.

Based on the foregoing, the Sheriff's Motion to Dismiss Count II is denied.

Accordingly, it is now **ORDERED, ADJUDGED,** and **DECREED:**

(1)  The Sheriff's Motion to Dismiss (Doc. # 26) is **GRANTED IN PART** as to Count I, which is dismissed without prejudice, and **DENIED IN PART** as to Count II.

(2)  The Court grants Holder leave to file a Second Amended Complaint <u>within 14 days</u> of the date of this Order, in order to cure the deficiencies detailed above with respect to the section 1983 claim(s). Holder is not required to amend Count II.  The Sheriff is advised that any additional immunity arguments should be raised at the summary judgment stage and not in a subsequent motion to dismiss.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 24th day of April, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record